## LYDIA J. MELE *v.* CITY OF HARTFORD ET AL.
### (AC 32728)

Bishop, Bear and Pellegrino, Js.

Argued April 27—officially released July 5, 2011

*Anne Kelly Zovas*, for the appellants (defendants).

*Lydia J. Mele*, pro se, the appellee (plaintiff).

*Opinion*

BEAR, J. The defendants, the city of Hartford (Hartford) and its insurer, Constitution State Service Company/Travelers Insurance (Travelers), appeal from the decision of the workers' compensation review board (board) reversing in part the decision of the workers' compensation commissioner for the first district (commissioner),[1] which had dismissed the claims of the

---

[1] The board's decision states that the commissioner's decision is reversed. We note, however, that the board did not reverse the commissioner's decision in its entirety, but, rather, affirmed that portion of the decision dismissing the plaintiff's claim of undue delay. The plaintiff has not filed a cross appeal challenging that aspect of the decision. Accordingly, it is not before us.

plaintiff, Lydia J. Mele, concerning a wheelchair that had been provided to her by the defendants. On appeal, the defendants claim that the board improperly substituted its findings for those made by the commissioner. We disagree and, therefore, affirm the decision of the board.

Certain underlying facts are not in dispute. As a result of work related injuries, the plaintiff required the use of a wheelchair. In 2007, Travelers, through Brian Rossi of Connecticut Rehab & Medical Products, Inc. (Connecticut Rehab),[2] evaluated the plaintiff's need for a new wheelchair. Eventually, Rossi and Scott Dyson, who also was employed by Connecticut Rehab, determined that the plaintiff should receive a Quantum 600 wheelchair. The plaintiff almost immediately had problems with the new Quantum 600 wheelchair, so she sought its modification or replacement, which was denied by Travelers.

The matter was brought to a formal hearing before the commissioner on October 7, 2008, and January 6, 2009, in which the plaintiff claimed that the defendants should be required to modify or replace the new wheelchair and that they unduly had delayed the administration of her claim. During the hearing, the plaintiff testified that she had been employed by Hartford as a teacher and guidance counselor for more than thirty years. She sustained injuries to her knees, shoulders, back, wrist and elbow in 1985; Gordon A. Zimmerman is her treating physician for those injuries. She sustained ankle injuries in 1988; Michael S. Aronow is her treating physician for those injuries. The plaintiff injured her neck, thoracic spine, lumbar spine, shoulders, wrist and elbow in 1990; her treating physician for those injuries is Gerald J. Becker. The plaintiff testified that, due to her

---

[2] Connecticut Rehab is now known as ATG Rehab. For purposes of this opinion, however, we continue to use the name Connecticut Rehab.

injuries, all three of her treating physicians prescribed a motorized wheelchair for her. The defendants in 2003 or 2004 provided her a wheelchair. However, the first wheelchair she received was unsuitable for sustained use because it was designed only for indoor use, and she needed it for outdoor use as well. Travelers' wheelchair vendor at the time, Hudson Health, had to install replacement motors in the wheelchair on at least two occasions.

As set forth previously, in 2007, the plaintiff met with Rossi, the representative of Travelers' new wheelchair vendor, Connecticut Rehab, for the purpose of obtaining a new wheelchair. The plaintiff testified that she repeatedly told Rossi that she needed a high-back wheelchair with lumbar support and that one of her physicians had prescribed lumbar support. She stated that Rossi said he did not need a copy of the prescriptions unless the request for a new chair was denied.[3] Rossi, however, testified that the plaintiff never mentioned the prescriptions or the need for lumbar support before getting the new wheelchair.

In June, 2007, Connecticut Rehab delivered to the plaintiff a Quantum 600 wheelchair. Almost immediately, the plaintiff complained that the wheelchair was not suitable for her needs and that it had no tie-down straps for transportation. She stated that the wheelchair rattled, the seat was moving and it was causing her great back pain because it had no lumbar support. She also thought the chair portion of the wheelchair was too big for her. Rossi made several attempts to make the wheelchair more suitable for the plaintiff: First, he arranged for tie-down straps to be installed on the wheelchair, which were necessary to transport the

---

[3] The plaintiff had two prescriptions from Becker that were dated in the year 2000, specifically stating that the plaintiff needed a wheelchair with lumbar support.

wheelchair in a wheelchair van; second, he attempted to fix the chair with duct tape, and third, he tried to attach two different lumbar support pads to the chair. None of these fixes were suitable for the plaintiff's needs, and she continued to complain of back pain associated with her use of the new wheelchair. The plaintiff explained during the hearing that there was a large gap in the back of the wheelchair seat and that any attempt to attach a lumbar support pad was unsuccessful because of the gap and the concave shape of the chair back. She also stated that the shape of the chair did not permit her to sit upright, which also caused back pain. Furthermore, the plaintiff testified that she is unable to use the Quantum 600 in her home because it did not fit in her kitchen or bathroom.

Because Rossi was unable to fix the chair to meet the needs of the plaintiff, he referred her to a physical therapist. Rossi specifically testified that he "decided that [he] was not going to be able to solve some of [the plaintiff's] seating issues and that [they] should involve a physical therapist at this point to get the professional and clinical knowledge that a therapist would bring to the table." He testified that he "recognized that [the plaintiff] may be having . . . further medical issues . . . [and that] the seat that she's currently in may not be meeting her medical needs." On September 27, 2007, the plaintiff met with Paul Zelinsky at Eastern Connecticut Health Network, Inc. Zelinsky recommended that the Quantum 600 be modified to suit the plaintiff's medical needs. Becker, one of the plaintiff's treating physicians, also recommended that the wheelchair be modified.

The commissioner suggested that the plaintiff be evaluated at Gaylord Hospital in Wallingford for another wheelchair assessment, but she did not act on that suggestion.

During the hearing before the commissioner, Rossi, who at the time of the hearing was certified as an assistive technologies practitioner but who had not yet received such certification when he met with the plaintiff and ordered her wheelchair,[4] testified that he did not think that Zelinsky possessed the necessary qualifications to match patients with wheelchairs appropriate for their needs.

After the hearing, the commissioner issued a written decision on August 25, 2009. The commissioner found that the plaintiff was basing her request for modifications to the Quantum 600 wheelchair on the assessments of Zelinsky and Becker, but that those assessments were not credible or persuasive because there was no evidence that either Zelinsky or Becker had specialized knowledge as to what specific wheelchair equipment was suitable for the plaintiff. The commissioner also found that the plaintiff's testimony that she had told Rossi that she needed lumbar support was not credible. Additionally, the commissioner found, in part on the basis of his "personal observations," that the plaintiff has the ability to ambulate and that "[h]er complaints of discomfort are subjective and exaggerated."[5] The commissioner concluded that the plaintiff

---

[4] Rossi stated that he had received his training from "RESNA," but that he could not remember the meaning of the acronym. It is unclear if "RESNA" is the entity from which he received his certification. He also testified that "RESNA" is "a national organization [that] accredits all assistive technology supplier[s] [and that] Medicare . . . require[s] that in order to provide assistive technology devices, such as high-end rehab, that you have a certification . . . ."

[5] In its written decision, the board concluded that these statements should be stricken because they were unsupported and improper: "We note that the numerous voluntary agreements in the file and voluminous medical record[s] clearly attest to the extent of the claimant's injuries; moreover, given that the [defendants] have accepted the claimant's need for a wheelchair . . . we hold that the trial commissioner's statement . . . is improper and should be stricken."

had not met her burden of proving that the modifications were medically necessary or reasonable. Accordingly, he dismissed the plaintiff's claim for modification or replacement of the Quantum 600 wheelchair. The commissioner also dismissed the plaintiff's claim that the defendants unduly had delayed the administration of her request for modification or replacement of the Quantum 600. The plaintiff appealed this decision to the board.

The parties participated in oral argument before the board on March 26, 2010. In a written decision dated September 13, 2010, the board agreed with the plaintiff's contention that the commissioner erred in dismissing as not credible the opinions of Becker and Zelinsky on the issue of medical necessity. The board reviewed the report submitted by Zelinsky, which "indicate[d] that Zelinsky began by identifying the [plaintiff's] numerous orthopedic injuries and then proceeded to itemize the deficiencies present in the [plaintiff's] current chair. Zelinsky concluded his report by reciting a number of modifications necessary to directly address the [plaintiff's] complaints regarding the chair."[6] The board also reviewed the report of Becker, in which Becker stated that he had reviewed Zelinsky's report and that he agreed that modifications to the wheelchair were necessary. The board further reviewed the additional notes of Becker from various dates in 2007 and 2008, "all of which reference[d] the [plaintiff's] need for seating modifications" and Becker's prescriptions from September and November, 2000, which specifically prescribed lumbar support for the plaintiff. After reviewing this evidence and the other evidence presented to the commissioner, the board concluded that the commissioner had drawn unreasonable inferences, especially

---

[6] The board also noted that Zelinsky's report indicated that his assessment was completed in consultation with a representative from Connecticut Rehab; the name of that consultant, however, was not disclosed in the report.

regarding Zelinsky and Becker, and that the commissioner's conclusions could not be sustained. Accordingly, the board reversed the commissioner's dismissal of the plaintiff's claim that she was entitled to a new wheelchair or to modifications of the Quantum 600. See footnote 1 of this opinion. This appeal followed.

On appeal, the defendants claim that the board improperly substituted its judgment for that of the commissioner. We disagree.

"We begin by setting forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. . . . The board sits as an appellate tribunal reviewing the decision of the commissioner. . . . [T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [T]he power and duty of determining the facts rests on the commissioner . . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . . Where the subordinate facts allow for diverse inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . .

"This court's review of decisions of the board is similarly limited. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [W]e must interpret [the commissioner's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence. . . . Once the commissioner makes a factual

finding, [we are] bound by that finding if there is evidence in the record to support it." (Citations omitted; internal quotation marks omitted.) *Williams* v. *State*, 124 Conn. App. 759, 763–64, 7 A.3d 385 (2010).

On appeal, the defendants argue that the "board has improperly concluded that the [plaintiff] had met her burden of proof by convincing evidence so as to entitle her to the replacement wheelchair she was requesting and further, that the board has overstepped its bounds by reversing the trial commissioner's findings of fact and substituting its own findings." We do not agree.

In its written decision, the commissioner found that the opinions contained in the written reports of Zelinsky and Becker were not credible because there was no evidence that Zelinsky or Becker had "any specialized knowledge as to what specific wheelchair equipment is medically necessary for the [plaintiff]." The commissioner also found that Zelinsky's "qualifications are unknown" and that Becker merely had "adopted" the recommendations of Zelinsky. It is evident from reading the commissioner's decision, that he based his conclusion that the plaintiff had not met her burden of proof, in large part, on these specific findings. The board concluded that these findings were unreasonable and unsupported. We agree.

Although Rossi had testified before the commissioner that he did not believe that Zelinsky was qualified to match a patient with an appropriate wheelchair, there is nothing in the record to demonstrate a basis for Rossi's belief. The record is devoid of any attempt by the defendants to challenge the qualifications of either Zelinsky or Becker. Further, Rossi admitted that he had advised the plaintiff to seek out the assistance of a physical therapist because a physical therapist would supply needed "professional and clinical knowledge." He also stated that although he generally works with

a physical therapist in designing a suitable wheelchair for a patient, he did not do so in this case; no explanation was offered as to why, in this particular case, he failed to follow his normal procedure.

Furthermore, as to the commissioner's finding that Zelinsky's qualifications were unknown, a review of Zelinsky's November 15, 2007 report reveals that Zelinsky works at Eastern Connecticut Health Network, Inc., which has several locations, including Manchester Memorial Hospital, Rockville General Hospital, Woodlake at Tolland Nursing & Rehabilitation Center and the Women's Center for Wellness. Zelinsky's report further reveals that he is a physical therapist, with a master of science degree, and that he is the manager of rehabilitation services at Evergreen Walk. Accordingly, his qualifications were not unknown. In Zelinsky's report, he states that he was asked by Connecticut Rehab to consult on the plaintiff's wheelchair modifications, although the report does not reveal the name of the person who made that request. The report lists several of the plaintiff's existing diagnoses and then states that Zelinsky thoroughly reviewed the existing configuration of the wheelchair "in consultation with [a] representative from CT Rehab" and that they indentified several problems.[7] The report explains the problems with the existing configuration of the Quantum 600 wheelchair and then lists several modifications that are necessary to "ensure proper seat positioning and support . . . ." The report also states that a copy was sent to Rossi.

As to the commissioner's finding that Becker had relied on Zelinsky's report to reach his conclusion that modifications to the plaintiff's wheelchair were medically necessary and that there was no evidence that Becker had "any specialized knowledge as to what specific wheelchair equipment is medically necessary for

---

[7] The report does not specify with whom Zelinsky consulted. However, Rossi testified that he met with Zelinsky and the plaintiff twice.

the [plaintiff]," we also conclude that these findings are not supported by the evidence, and, in fact, are contrary to the evidence. The plaintiff's medical records from Becker's office were in evidence before the commissioner. These records reveal that Becker is a medical doctor who is a professional employee of Orthopedic Associates of Hartford, PC (Orthopedic Associates). His stationery shows that Orthopedic Associates specializes in "spinal surgery, arthroscopy, hand surgery, joint replacement, sports medicine, foot surgery [and] trauma." The records reveal that the plaintiff has been a patient of Becker since at least 1990. In September, 2000, Becker prescribed a chair with lumbar support for the plaintiff. In November, 2000, Becker prescribed a "scooter with high lumbar support with padding." In September, 2001, Becker again prescribed a lumbar chair for the plaintiff. In October, 2007, Becker wrote a report stating that the plaintiff continued to have thoracic pain and that she needed lumbar support. He stated that he previously had prescribed a lumbar support chair for her and that "the current chair does not provide the support that she needs." The report also stated that the plaintiff "does require chair modification." This report was authored by Becker in October, 2007; we note that Zelinsky's report was authored in November, 2007.

On December 11, 2007, Becker wrote another report in which he stated that the plaintiff had been under his care for her back condition. He stated that the plaintiff has problems with her wheelchair and that they specifically "deal with the degree of lumbar support that she has, the fact that she is in a kyphotic position when she sits, and the fact that her pelvic tilt is not appropriate when she is sitting in the chair. She requires a change in her seat length to avoid pressure on her knees, and she requires moveable leg rests so that her legs will not be in a dependent position, as she has edema of

her lower extremities." The report then states that Becker has reviewed the Zelinsky recommendations and that he agrees that the plaintiff's wheelchair needs modification. He also listed the modifications that in his medical opinion were "necessary."

The plaintiff again was seen by Becker in April, 2008, specifically for a follow-up visit. In the report generated as a result of that visit, Becker, in relevant part, "recommend[ed] seating modification to give [the plaintiff] more appropriate support for her thoracic and lumbar spine, as well as her neck." In a report generated after the plaintiff's next follow-up visit, dated July 30, 2008, Becker again recommended "chair modifications to enable [the plaintiff] to sit more comfortably."

Despite receiving these reports into evidence, the commissioner failed to discuss any of the reports by Becker, except that he stated they were not credible because they were based on Zelinsky's recommendations. We find nothing in the reports of Becker, which date back to 1998, and, which, beginning in 2000, repeatedly state that the plaintiff needs a chair with, inter alia, lumbar support, that indicates that Becker is relying on Zelinsky's recommendations rather than his own medical opinion. Furthermore, there is nothing in the record that demonstrates that Zelinsky was not qualified to offer a recommendation in this case, especially in light of Rossi's testimony that he generally works with a physical therapist before designing a wheelchair for a patient and that a physical therapist would provide necessary "professional and clinical knowledge." On the basis of the evidence presented to the commissioner, we agree with the board that the commissioner's findings were not supported by the evidence and that his conclusions, therefore, were unreasonable.[8]

_____

[8] We also take this opportunity to comment, as did the board, on the plaintiff's failure to act on the commissioner's suggestion that she obtain an assessment at Gaylord Hospital. Although the commissioner did not base his decision on the plaintiff's failure to pursue this suggestion, we point

The decision of the workers' compensation review board is affirmed and, because of the amount of time that has passed, the matter is remanded to the board with direction to remand the case to a commissioner for a determination of whether there should be modifications to the plaintiff's Quantum 600 wheelchair or whether a new wheelchair should be provided to her.

In this opinion the other judges concurred.

out that General Statutes § 31-294f (a) requires a claimant to submit to "examination by a reputable practicing physician or surgeon, at any time while claiming or receiving compensation, upon the reasonable request of the employer or at the direction of the commissioner. . . ." It does not appear from the record, however, that the commissioner "directed" the plaintiff to obtain an assessment. Rather, the transcript reveals that he characterized this as a "suggestion."